UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JULIUS SHELTON,<br>    Plaintiff,<br><br>v.<br><br>JALEN MORRIS, ROBERT RADZIWIEKI,<br>ADAM GARCIA, and TIMOTHY<br>LEIMBACH,<br>    Defendants. | )<br>)<br>)<br>)   CAUSE NO.: 2:23-CV-77-JVB-APR<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

Julius Shelton, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Shelton alleges that on April 7, 2021, East Chicago Police Officer Jalen Morris pulled him over without a valid reason. ECF 1 at 4. Officer Morris approached and asked for his information, if he had anything illegal in the car, and where he was headed. Shelton alleges that he told the officer where he was headed, that he had nothing illegal in the car, and gave him his license. Officer Morris then ran his information, came back to the car, and asked him to step out of the car.

When Shelton asked the officer why he needed to step out, Officer Morris allegedly told him that no warrants turned up when he ran Shelton's information, but he needed to step out of the car so that he could search Shelton and his car. ECF 1 at 4-5. Shelton explicitly told Officer Morris

that he did not consent to a search of his person or his car. He asked why he had been pulled over, and Officer Morris told him that he was speeding. Shelton maintains that he was not speeding. He says he asked for his information back, a citation (if any), and to be let go. Officer Morris allegedly told him no and aggressively ordered him to get out of the car.

Shelton alleges he feared for his safety, so he rolled his window partially up and began calling his mother so that he would have a witness to the interaction. ECF 1 at 5. Officer Morris continued to tell him to roll his window down and get out of the car. Shelton continued to say he wasn't consenting to a search. Shelton then asked for a "white shirt." *Id.* Officer Morris said he would call one and warned that things were about to get worse.

When Sergeant Timothy Leimbach arrived, Shelton reports that he approached the car and told Shelton to "get the fuck out of the car" or his window would be broken and they would sic a canine on him. ECF 1 at 5. Shelton asked why they were trying to force him out of his car, and Sergeant Leimbach responded because they can. Shelton told the sergeant that they had no reason to stop or search him and he was not consenting to a search. Sergeant Leimbach said they didn't need a reason and continued to tell him to get out of the car or they would break his car window and sic a canine on him.

Shelton alleges that he then told the officers that he was getting out of the car but asked that they put the dog away first. ECF 1 at 6. At that point, Sergeant Leimbach broke a car window and administered pepper spray through the broken window. Shelton says he feared for his life at this point, and told the officers to watch his hands, they are up, and he's coming out. Sergeant Leimbach then allegedly pointed his gun at Shelton, yelling for him to "get the fuck out of the car." *Id.* Shelton says that he opened the door, stepped out, and was aggressively forced to the ground.

2

Shelton alleges that while he was face down, he put his hands behind his back to be cuffed and was not resisting. ECF 1 at 6. Nevertheless, he contends that Officer Morris instructed his dog to bite him. Shelton claims that even after he was cuffed, the officer allowed the dog to bite him for 30 more seconds. After the dog released him, Shelton was picked up off the ground, and the officers searched him and his car without consent or probable cause.

After Shelton continued to verbally protest the search, Sergeant Leimbach told him to shut up and pepper sprayed him. ECF 1 at 6-7. His injuries were treated at the hospital before he was taken to the East Chicago Police Department, where he was released soon after without being charged. He ended up with a bruise on the left side of his forehead, a broken bone and open wound on his right foot, and injuries to his shoulders and upper arms.

A couple months later, Shelton was arrested on a federal indictment on two charges of being a felon in possession of a firearm, one from October 14, 2020, and the second from April 7, 2021, (the day at issue in this lawsuit). *See United States v. Shelton*, No. 2:21-cr-79-JTM-APR (N.D. Ind. filed June 17, 2021). He alleges that Task Force Officer Philip Fabien helped falsify reports and presented them to federal officials, resulting in his arrest. ECF 1 at 7. Currently, he has pleaded guilty to the October 2020 charge and is awaiting sentencing. *See Shelton*, No. 2:21-cr-79-JTM-APR, at ECF 34.

"The Fourth Amendment prohibits unreasonable searches and seizures." *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014). "Because traffic stops are typically brief detentions, more akin to *Terry* stops than formal arrests, they require only reasonable suspicion of a traffic violation—not probable cause." *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (en banc). "Reasonable suspicion exists only when an officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United*

3

*States v. Pace*, 48 F.4th 741, 749 (7th Cir. 2022). "If an officer reasonably thinks he sees a driver commit a traffic violation, that is sufficient grounds to pull him over without offending the Constitution." *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019).

Here, Shelton alleges that he was not speeding and did not otherwise commit a traffic violation that would justify the traffic stop. Giving him the inferences he is entitled to at this stage of the proceedings, he may proceed against Officer Morris for pulling him over in violation of the Fourth Amendment.[1]

Shelton further contends that the force used against him during the stop was excessive under the Fourth Amendment. Excessive-force claims that occur during the course of an arrest or apprehension of a suspect "are governed by the Fourth Amendment's 'reasonableness' standard, which turns on the totality of the circumstances confronting [the officers] viewed from the perspective 'of a reasonable officer on the scene . . . .'" *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 396 (1989)). In analyzing these claims, the Court must "consider the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." *Bayon v. Berkebile*, 29 F.4th 850, 854 (7th Cir. 2022) (internal quotation marks and citations omitted). Even the use of deadly force may be reasonable if an officer has probable cause to believe the suspect is armed and poses a threat of physical harm or is about to escape. *See Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020). An officer's use of force is unreasonable if, judging

---

[1] To the extent that Shelton is seeking to assert claims for an unlawful search or arrest, such claims are not independent of the alleged unlawful traffic stop. If a traffic stop is lawful, then an officer has the right to order Shelton to exit the car and may use reasonable force to enforce compliance if Shelton does not obey. *See Smith v. Ball State Univ.*, 295 F.3d 763, 769-71 (7th Cir. 2002). As the facts are developed during discovery, Shelton will have the opportunity to file an amended complaint if he believes he has facts showing a basis for a separate claim for an unlawful search or arrest.

4

from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest. *Gonzalez v. City of Elgin,* 578 F.3d 526, 539 (7th Cir. 2009). Giving Shelton the inferences to which he is entitled at this stage, he states a plausible Fourth Amendment claim against Sergeant Leimbach for pepper spraying him twice and against Officer Morris for instructing the dog to bite him.

Shelton alleges that Officer Robert Radziwiecki and Officer Adam Garcia were present during the encounter but did not intervene to stop the use of excessive force. ECF 1 at 4. "[O]fficers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Shelton may proceed against these defendants.

Shelton, however, does not state a claim against the remaining defendants. He sues the City of East Chicago, the City of East Chicago Police Department, and East Chicago Chief of Police Jose Rivera, alleging they failed to supervise and properly train their police officers in the use of force, apparently seeking to assert a claim under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). ECF 1 at 3. The East Chicago Police Department is not an individual or even a policy-making unit of government that can be sued under 42 U.S.C. § 1983. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (applying Indiana law). As to the City of East Chicago and the Police Chief, they "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). "A municipal entity can be liable under section 1983 for constitutional violations only if those violations were brought about by: (1) an express policy; (2) a widespread, though unwritten,

custom or practice; or (3) a decision by an agent with final policymaking authority." *Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 829 (7th Cir. 2022) (footnote omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). The allegations in the complaint do not satisfy this standard. Shelton does not identify what the alleged unconstitutional policy or custom was or include factual content plausibly suggesting the existence of an official policy or widespread practice that caused him injury. Shelton must provide allegations of constitutional violations beyond his one-time interaction with the police to support a plausible *Monell* claim.

Finally, Shelton does not state a claim against Task Force Officer Philip Fabien for allegedly falsifying reports that led to his arrest on federal charges. The complaint does not explain what involvement Officer Fabien had in writing the reports, what parts of the report were fabricated, or how this resulted in his arrest. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Here, there is not enough information to allow this claim to proceed.

For these reasons, the Court:

(1) **GRANTS** Julius Shelton leave to proceed against Officer Jalen Morris in his individual capacity for compensatory and punitive damages for initiating a traffic stop without reasonable suspicion on April 7, 2021, in violation of the Fourth Amendment;

(2) **GRANTS** Julius Shelton leave to proceed against Officer Jalen Morris in his individual capacity for compensatory and punitive damages for using excessive force when his dog bit Shelton even though he did not pose a threat on April 7, 2021, in violation of the Fourth Amendment;

(3) **GRANTS** Julius Shelton leave to proceed against Sergeant Timothy Leimbach in his individual capacity for compensatory and punitive damages for using pepper spray against him twice on April 7, 2021, even though he did not pose a threat, in violation of the Fourth Amendment;

(4) **GRANTS** Julius Shelton leave to proceed against Officer Robert Radziwiecki and Officer Adam Garcia in their individual capacities for compensatory and punitive damages for failing to intervene in the alleged uses of excessive force on April 7, 2021, in violation of the Fourth Amendment;

(5) **DISMISSES** all other claims;

(6) **DISMISSES** East Chicago the City of, East Chicago Police Department, Jose Rivera, and Philip Fabien;

(7) **DIRECTS** the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Jalen Morris, Timothy Leimbach, Robert Radziwiecki, and Adam Garcia at the East Chicago Police Department, with a copy of this order and the complaint (ECF 1);

(8) **ORDERS** the East Chicago Police Department to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(9) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Jalen Morris, Timothy Leimbach, Robert Radziwiecki, and Adam Garcia to respond, as provided for in the Federal Rules of Civil Procedure

and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on April 13, 2023.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
